**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Luis NAVARRO–VARELAS, aka Jose
Dustano Beltran Martin,
Defendant-Appellant.**

**No. 76–1703.**

United States Court of Appeals,
Ninth Circuit.

Aug. 24, 1976.

Danilo J. Becerra, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant. ·

William D. Keller, U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before TRASK and CHOY, Circuit Judges, and EAST,* Senior District Judge.

EAST, Senior District Judge:

Luis Navarro-Varelas, Appellant, following a jury trial, was convicted on two separate counts of knowingly importing a quantity of cocaine into the United States in violation of 21 U.S.C. §§ 952 and 960(a)(1) and knowingly possessing with intent to distribute the cocaine in violation of 21 U.S.C. § 841(a)(1). The District Court sentenced the Appellant to eight years imprisonment with a 15 year special parole term on each count, the sentences to be served concurrently. Appellant appeals. We affirm.

The two issues on review are:

(1) Did the District Court abuse its discretion by refusing to permit a defense witness to testify regarding common schemes employed in narcotics smuggling?

(2) Did the District Court deny Appellant his Sixth Amendment right to

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

present evidence in his own behalf by:

(a) Refusing to admit into evidence a stipulation that the fingerprints found in the secret compartment containing the cocaine were smudged and thus not identifiable; and

(b) Refusing to allow the playing of a tape recording of a prior consistent statement of Appellant made at the time of his arrest?

Appellant, a resident of Medollin, Colombia, arrived at the Los Angeles International Airport about 1:30 p. m. on November 17, 1975 on a flight from Guatemala City, Guatemala. He held a round trip ticket and carried a forged Colombian passport in the name of Jose Dustano Beltran Martin. He had no other identification, no address book, photographs, letters or anything else bearing either a name or an address.

Appellant was ordered to a secondary inspection area by Customs Inspector Leonard Bury when the agent noticed that the lining on one of the Appellant's two suitcases was unusually thick. Appellant was ordered to sit down while his luggage was examined more closely. Bury drilled a small hole in the wooden lining of the suitcase and discovered a white powdery substance which subsequently field tested positively for cocaine. The testimony of the Government chemist that the substance was in fact four and a half pounds of cocaine was stipulated to by the parties.

Bury testified that the Appellant showed no reaction to the drilling of the hole in his suitcase, to the discovery of the white powder in the lining, nor to being informed of his arrest and reason therefor. On cross-examination, Bury stated that the concealment of the cocaine in the suitcase's false compartment was of good craftsmanship, and that the cocaine had been evenly compacted on all four sides of the suitcase.

The defense contended that the Appellant did not have any knowledge that his suitcase contained a secret compartment which contained cocaine or any other contraband.

The Appellant testified that:

He was 45 years old and a resident of Medollin where he had earned his living for the last 20 years as a bus or taxicab driver;

This was his first trip outside of Colombia;

The only thing he knew about cocaine was what he had read in magazines and had no knowledge that cocaine emanated from Colombia or that Americans smuggle cocaine out of Colombia;

He had met a Mr. Escolme during the month before in Medollin where he had driven Escolme around Medollin for a couple of days in his taxi seeing the various tourist sites, and Escolme had told Appellant that he owned a laundry in Los Angeles and could use a good driver like him for one of his trucks;

He had come to Los Angeles to meet Escolme for a year's work;

Escolme had made all arrangements for the trip, providing a passport, tickets, and $1,000 in expense money;

He had provided Escolme with three passport photos on a later occasion and was told he would receive the passport from Escolme.

Later he received a passport that was not in his name and was told by Escolme that everything was "O.K." since Escolme had a friend who worked at the Consulate, and that once in the United States, the papers would be straightened out; and

He had never traveled outside of Colombia and so did not have a large suitcase, and on the day before the trip, Escolme offered to lend him one which turned out to be the suitcase containing the cocaine.

*Issue 1:*

■ Appellant attempted to call Drug Enforcement Agent Larry Nance to testify as an expert as to a common ploy or scheme used by narcotics smugglers to smuggle contraband into the United States. The District Court denied the attempt and Appellant tendered an offer of proof that a common scheme or ploy used by narcotics

smugglers was to plant narcotics in secret compartments of suitcases and have an unwary traveler bring the narcotics into the United States.

This court has determined in *United States v. Amaral,* 488 F.2d 1148, at 1152 (9th Cir. 1973), that "[t]he general test regarding the admissibility of expert testimony is whether the jury can receive 'appreciable help' from such testimony. [Citations omitted] The balancing of the probative value of the tendered expert testimony evidence against its prejudicial effect is committed to the 'broad discretion' of the trial judge and his action will not be disturbed unless manifestly erroneous. *Salem v. United States Lines Co.,* 370 U.S. 31, [82 S.Ct. 1119, 8 L.Ed.2d 313] . . . (1962)."

The Appellant testified fully concerning his innocent victim status in the whole affair, and we are satisfied that the jury was well aware of the defense premise that the Appellant was an innocent unwitting carrier of contraband at the hands of a scheming drug smuggler. We are also satisfied that the proffered expert testimony as to a common ploy or scheme indulged in by smugglers to victimize innocent carriers added no probative evidentiary value tending to prove or disprove the guilt or innocence of the Appellant. The District Court's rejection of the offer of proof was not erroneous.

*Issue 2(a):*

■ The Appellant offered into evidence a stipulation signed by the parties that the secret compartment in the suitcase had been examined for fingerprints and that, although ridges were located, they could not be identified. The District Court refused, over the defense's objection, the reading of the stipulation stating that it established nothing, either for the Government or for the Appellant.

We agree with the District Court that the fact of unidentifiable fingerprint smudges found on the suitcase does not tend to prove or disprove any substantial element of the alleged crimes. The proffered evidence was not relevant, and the District Court did not err in refusing the offer. Federal Rules of Evidence 402. *See Diaz-Rosendo v. United States,* 364 F.2d 941, 944 (9th Cir. 1966).

*Issue 2(b):*

■ The Appellant offered to introduce and play a tape recording of the interview of the Appellant by Agent Nance to show that the testimony of the Appellant was not a recent fabrication. The Appellant urged that the recorded statements were consistent with the Appellant's testimony and would, therefore, reinforce the Appellant's credibility. The District Court excluded this evidence ruling that a defendant's prior consistent statement is not admissible unless the opposing party has attacked the defendant's in-court testimony as a recent fabrication.

The District Court's rejection of the offer was correct. Federal Rules of Evidence 801(d)(1)(B); D. McCormick, Law of Evidence § 49 at 106 and n. 73 at 102–03 (2d Ed. 1972). *See Coltrane v. United States,* 135 U.S.App.D.C. 295, 418 F.2d 1131, 1140 (1969). *Accord, Schoppel v. United States,* 270 F.2d 413, 417 (4th Cir. 1959).

> "When the witness has merely testified on direct examination, without any impeachment, proof of consistent statements is unnecessary and valueless. The witness is not helped by it; for, even if it is an improbable or untrustworthy story, it is not made more probable or more trustworthy by any number of repetitions of it. Such evidence would ordinarily be cumbersome to the trial and is ordinarily rejected." 4 J. Wigmore, Wigmore on Evidence § 1124 at 255 (Chadbourn Rev. 1972).

The judgment of conviction and sentence entered by the District Court on December 19, 1975 is affirmed.

AFFIRMED.