UNITED STATES of America, Plaintiff-Appellee,

v.

**Miguel GARZON, Defendant-Appellant.**

No. 81–1421.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 1982.

Decided Sept. 20, 1982.

John D. Vandevelde, Talcott, Vandevelde & Woehrle, Los Angeles, Cal., for defendant-appellant.

R. Brian Ball, Asst. U.S. Atty., Los Angeles, Cal., argued for plaintiff-appellee; Mark E. Beck, Asst. U.S. Atty., Los Angeles, Cal., on brief.

---

Before SCHROEDER, CANBY, and NORRIS, Circuit Judges.

NORRIS, Circuit Judge:

Appellant Miguel Garzon appeals from a conviction for possession of cocaine with intent to distribute and conspiracy to distribute cocaine. He claims prejudicial error from a "conscious avoidance" jury instruction. We agree and reverse.

## I

The evidence at trial may be summarized as follows. In March of 1981, appellant's co-defendant, Moreno, met Weaver, who, unknown to Moreno, was a Drug Enforcement Agency (DEA) informant. Moreno and Weaver discussed the possibility of future drug deals. On March 25, 1981, Moreno told Weaver that he had located a seller of drugs. Late that night, Moreno took Weaver to a location in Inglewood, California where appellant and his father had adjacent homes on the same lot: appellant lived in the home in the front; the father lived in the home in the rear. According to Weaver's testimony at trial, Moreno, the father, and appellant negotiated to sell four kilograms of cocaine. The discussions took place first at the front home, where the father showed Weaver a small amount of cocaine, and then at the rear home, where the father showed Weaver all four kilos of cocaine. Weaver testified that appellant was present during both displays.

Weaver then left, ostensibly to find purchase money. Instead, Weaver met with DEA agents to make arrangements for the bust.

The next afternoon, Weaver returned to the Garzons' homes with two DEA undercover agents. The father met the three at the front gate and walked them to the rear home. On the way, the father asked appellant to join them in the rear home. Once the six had assembled at the rear home, the father left for a moment and returned with a package that contained cocaine.

One of the DEA agents testified that he and appellant discussed terms of the deal, with appellant limiting the sale to one pound of cocaine.

The father set the package down on the kitchen counter. Either at the father's request, or on his own, appellant then picked up the package, opened it, and showed it to the DEA agents.

Finally, Weaver, the father, and one of the DEA agents left the rear home to retrieve the money. The father was arrested outside. Appellant was arrested inside the rear home with $1100 cash in his pocket. A subsequent search revealed a scale in the rear home, and a scale in the front home.

Appellant's defense at trial was that he had no knowledge of any cocaine deal. Appellant denied involvement at the meeting the night before—a denial corroborated by testimony of his wife, brother, and father.[1] Appellant testified that he joined the group during the next afternoon because his father requested his presence and he was loyal to his father. Appellant denied having had any discussion with the DEA agent about terms of the deal. Appellant admitted only to carrying the package across the room and opening it up to show to the agents.[2]

---

1. Appellant testified at trial that he returned home with his wife and found his father and two strangers in his home. He told them to leave and they went to the rear home.

2. Appellant testified that the large amount of cash came from a job he had performed a few weeks before. The man who supposedly paid appellant testified at the trial and confirmed appellant's story. Appellant also explained that he did not have a bank account because he was a recent immigrant from Cuba and did not

"know the banks" and "all the money that I would get would be for like telephone and rent." During cross-examination, appellant stated that he had the money in his pocket because "when I was arrested I was involved in taking some steps with my wife because we had talked about looking for a lower rent, or something like that." Reporter's Transcript at 349.

Appellant offered no explanation for the scale found in his home.

Thus, the jury had to choose between the government's story, which portrayed appellant as a willful, knowing participant in all phases of the deal, and appellant's own story, which portrayed him as innocently present at a short meeting where he opened up a paper bag containing cocaine to show the DEA agents, but without knowledge that cocaine was involved.

## II

Over appellant's objection, the trial judge granted the government's request that a "conscious avoidance" instruction be read to the jury. According to this instruction, the jury could have found that appellant had the requisite knowledge if he was aware of the high probability that a drug deal was taking place and deliberately avoided learning the truth.[3] *See United States v. Valle-Valdez,* 554 F.2d 911, 914 (9th Cir. 1977); *United States v. Jewell,* 532 F.2d 697, 703–04 (9th Cir. 1976) (en banc).

We explained in *United States v. Murrieta-Bejarano,* 552 F.2d 1323 (9th Cir. 1977), that the "conscious avoidance" instruction "should not be given in every case where a defendant claims a lack of knowledge, but only in those comparatively rare cases where, in addition, there are facts that point in the direction of deliberate ignorance." *Id.* at 1325. The instruction should be given rarely because of the risk that the jury will convict on a standard of negligence: that the defendant *should* have known his conduct was illegal. Thus, even if the circumstances are highly suspicious, the instruction is improper unless the defendant acted deliberately to avoid learning the truth.

Occasionally, failure to inquire will constitute deliberate ignorance. *See, e.g., United States v. Nicholson,* 677 F.2d 706, 710–11 (9th Cir. 1982) ("Any reasonable person would have inquired extensively into the nature of the proposed venture before he invested $20,000 into it.). Usually, however, we think there must be evidence "that the defendant purposely contrived to avoid learning all of the facts in order to have a defense in the event of being arrested and charged." *Murrieta-Bejarano,* 552 F.2d at 1326 (Kennedy, J., dissenting).

We think there was insufficient evidence for a trier of fact to reasonably conclude that appellant contrived to avoid learning of the deal. To the contrary, appellant's conduct was *inconsistent* with conscious avoidance. By his own uncontradicted admission, appellant opened the bag containing the cocaine. Had he been consciously trying to avoid knowledge of a drug deal, surely he would not have opened the bag to show the contents to three men who were strangers to him. He did not close his eyes to avoid enlightenment; his eyes were open as he opened the bag and viewed a white powder. It was up to the jury to determine whether he was telling the truth in denying that he knew it was cocaine.

In sum, the choice for the jury was whether appellant knowingly participated in the drug deal or was merely innocently present at the final meeting. No evidence suggested a middle ground of conscious avoidance. It was error to give the instruction.

The government has not argued that any error was harmless. Appellant's conviction is REVERSED.

---

**3.** The trial judge instructed the jury that:

As stated before, with respect to an offense such as charged in this case, specific intent must be proved beyond a reasonable doubt before there can be a conviction.

However, the element of knowledge also may be satisfied by inferences drawn from proof that a defendant deliberately closed his eyes to what would otherwise have been obvious to him. A finding beyond reasonable doubt of a conscious purpose to avoid enlightenment would permit an inference of knowledge. Stated another way, a defendant's knowledge of a fact may be inferred from willful blindness to the existence of the fact.

It is entirely up to you as to whether you find any deliberate closing of the eyes, and the inferences to be drawn from any such evidence. A showing of negligence or mistake is not sufficient however to support a finding of willfulness or knowledge.

To find the requisite knowledge in this manner, you must find beyond a reasonable doubt that the defendant was aware of the high probability of the fact in issue and acted with a conscious purpose to avoid learning the truth about the fact."