**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Susana SANCHEZ–ROBLES,
Defendant–Appellant.**

**No. 90–50018**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 8, 1990.

Opinion and Memorandum Jan. 17, 1991.

Opinion and Memorandum Withdrawn
March 20, 1991.

Order and Opinion March 20, 1991.

Martha M. Hall and Robert L. Swain, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant.

Brian T. Kelly and Michael G. Wheat, Asst. U.S. Attys., San Diego, Cal., for plaintiff-appellee.

Before NORRIS, HALL and RYMER, Circuit Judges.

### ORDER

The appellee's request for publication is GRANTED.

The opinion and memorandum dispositions filed January 17, 1991, are withdrawn and the attached opinion filed in its stead authored by Judge Rymer.

### OPINION

RYMER, Circuit Judge:

A jury found Susana Sanchez–Robles guilty of importing cocaine, importing marijuana and possessing marijuana and cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a), 952 & 960. She appeals on grounds of insufficiency of the evidence, prosecutorial misconduct, error in several evidentiary rulings and error in giving a "deliberate ignorance" instruction under *United States v. Jewell,* 532 F.2d 697 (9th Cir.) (en banc), *cert. denied,* 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976), where the only evidence to support a *Jewell* instruction was her presence in a van which agents said reeked of marijuana. Because there were no circumstances to arouse in Sanchez–Robles's mind a suspicion of illegal activity aside from the strong odor and because that odor, if recognized, would establish only her actual knowledge of illegality and not deliberate ignorance, the *Jewell* instruction was inappropriate. Accordingly, we reverse.

### I. Facts

Sanchez–Robles, a mother of five, lived in El Centro, California. She frequently visited friends and relatives in Mexicali, Mexico. She claims that on June 30, 1989, four of her daughters, aged 4 to 17, asked her to take them to Mexico for tacos. A friend named Armando Lopez, whom she said she had known for one month, had left a van at her apartment, so she borrowed it and left for Mexico with her daughters at around 10 p.m. that evening. Sanchez–Robles claims that she did not use her own car that night because her other daughter, Guadalupe, had borrowed it to go out on a date. Guadalupe and her boyfriend testified that they went out together that night, taking the Sanchez–Robles car to Mexicali and returning at around midnight. Sanchez–Robles and the four daughters made the trip to Mexico in the Lopez van.

Upon their return to the United States at 11:50 p.m., a customs official at the Calexico port of entry overheard Sanchez–Robles speaking in Spanish to her daughters, all of whom were sitting on the front seats of the van, telling them to be quiet and not say anything. The inspector noticed an odor inside the van, which he recognized as marijuana. When he opened the side door of the van, the odor was stronger. He referred the van to a secondary inspection area, where another officer noticed the odor and took the family inside. A search of Sanchez–Robles found nothing illegal. The officer at the secondary inspection area characterized the odor from the driver's window of the van as a six on a scale of one to ten, with ten being the strongest, and the odor from the rear of the van as an eight-to-nine. Drug-sniffing dogs alerted customs agents to several areas in the van, and when inspectors took the vehicle apart, they found 43 pounds of cocaine and 417 pounds of marijuana hidden throughout. The dismantling process took an hour and a half, and as the inspectors were removing the contraband, they had to take fresh air breaks because the odor was so strong. After the van doors had been open for approximately five minutes, the odor of marijuana carried across to the far side of the secondary inspection lot.

Sanchez–Robles denied any knowledge of the drugs and claimed that she does not recognize the smell of marijuana. The district court's *Jewell* instruction was as follows:

If you have a reasonable doubt that the defendant actually believed that the vehicle she was in did not contain a controlled substance, then she did not have the requisite knowledge and you must find her not guilty.

However, the government can satisfy its burden of proof as to guilty knowledge by proving beyond a reasonable doubt that, although the defendant was not actually aware that there was a controlled substance in the vehicle at the time of her arrest, she nevertheless was aware of a high probability that the vehicle contained a controlled substance, and her ignorance of the presence of a controlled substance was solely and entirely a result of her having made a conscious effort to disregard the nature of that which was in the vehicle, with a conscious purpose to avoid learning the truth.

## II. *Jewell* Instruction

Though we consider jury instructions as a whole to evaluate their adequacy, "whether a jury instruction misstated elements of a statutory crime is a question of law and is reviewed de novo." *United States v. Spillone,* 879 F.2d 514, 525 (9th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990).

■ A *Jewell* instruction is premised on the notion that a defendant cannot insulate herself from criminal liability by consciously preserving a lack of actual knowledge of the criminal activity. "To act 'knowingly' ... is not necessarily to act only with positive knowledge, but also to act with an awareness of the high probability of the existence of the fact in question. When such awareness is present, 'positive' knowledge is not required." *Jewell,* 532 F.2d at 700. To fall within *Jewell,* a defendant must make "a calculated effort to avoid the sanctions of the statute while violating its substance. 'A court can properly find wilful blindness only where it can almost be said that the defendant actually knew.'" *Id.* at 704 (footnote omitted) (quoting G. Williams, Criminal Law: The General Part, § 57 at 159 (2d ed. 1961)).

Because of the risk that a jury might convict a defendant on mere negligence—"that the defendant *should* have known his conduct was illegal"—we have recognized that the instruction should be used sparingly. *United States v. Garzon,* 688 F.2d 607, 609 (9th Cir.1982). "The *Jewell* instruction should not be given in every case where a defendant claims a lack of knowledge, but only in those comparatively rare cases where, in addition, there are facts that point in the direction of deliberate ignorance." *United States v. Murrieta–Bejarano,* 552 F.2d 1323, 1325 (9th Cir.1977). "Thus, even if the circumstances are highly suspicious, the instruction is improper unless the defendant acted deliberately to avoid learning the truth." *Garzon,* 688 F.2d at 609; *see also United States v. Pacific Hide & Fur Depot, Inc.,* 768 F.2d 1096, 1098 (9th Cir.1985) (emphasizing that *Jewell* instruction is rarely appropriate).

Our cases upholding a *Jewell* instruction involved facts and circumstances creating a high probability of criminal activity that the defendant then ignored. In our cases disallowing a *Jewell* instruction, there were no suspicious circumstances surrounding the activity beyond direct evidence of the illegality itself, which goes only to actual knowledge.

For example, in *Jewell* itself the defendant entered the United States driving a car containing 110 pounds of marijuana concealed in a secret compartment. 532 F.2d at 698. He claimed a stranger who had given only his first name had approached him in Tijuana, Mexico and offered to sell him marijuana. When he declined, the stranger offered him $100 to drive a car across the border. He accepted and saw a secret compartment in the trunk of the car, but he declined to investigate further. *Id.* at 699 n. 2. Under those circumstances, we held that there was both circumstantial evidence of actual knowledge of the marijuana, *id.* at 698, and evidence that "he deliberately avoided positive knowledge of the contraband to avoid responsibility in the event of discovery." *Id.* at 699.

Cases following *Jewell* show a similar pattern of suspicious circumstances that go beyond direct evidence of the criminal activity itself. In *United States v. Murrieta–Bejarano*, 552 F.2d 1323 (9th Cir.1977), the defendant drove his employer's truck across the United States–Mexico border and was told to meet a man at a gas station. Murrieta–Bejarano claimed that the man dropped him off elsewhere, took the truck, loaded it with a refrigerator and returned. Murrieta–Bejarno then drove the truck back across the border, never having asked about the source of the refrigerator or why he could not be present for its loading. Even though he asserted that he had no actual knowledge of the drugs found in the truck at the second border crossing, the suspicious circumstances surrounding his trip created an awareness of the high probability of criminal activity and thus supported a *Jewell* instruction. *Id.* at 1325.

In *United States v. Nicholson*, 677 F.2d 706 (9th Cir.1982), the defendant invested $20,000 cash in an unspecified deal with someone he knew to be a drug smuggler. Nicholson was promised a high return on his investment, was given no documentation of the deal and later delivered $10,000 on one hour's notice in a brown paper bag. *Id.* at 707–08. We upheld a deliberate ignorance instruction. *See also United States v. Perez–Padilla*, 846 F.2d 1182 (9th Cir. 1988) (per curiam) (man placed baggie in defendant's jacket and gave him $300 to transport it to Tijuana); *United States v. McAllister*, 747 F.2d 1273 (9th Cir.1984) (stranger known only by first name offered defendant $25 to drive truck from San Diego to Los Angeles, delivered truck at 2 a.m. and instructed defendant to drive through closed truck scales area on highway to avoid border control checkpoint), *cert. denied*, 474 U.S. 829, 106 S.Ct. 92, 88 L.Ed.2d 76 (1985); *United States v. Suttiswad*, 696 F.2d 645 (9th Cir.1982) (stranger who had given only first name gave Thai defendant clothes, money, heavy suitcase and airplane ticket in return for bringing suitcase into U.S.); *United States v. Pacific Hide & Fur Depot, Inc.*, 768 F.2d 1096, 1098 (9th Cir. 1985) (citing more cases).

In each of these cases, the defendant remained willfully ignorant of the nature of his activity after the facts and circumstances would "have put any reasonable person on notice that there was a 'high probability' that the undisclosed venture was illegal. Any reasonable person would have inquired extensively into the nature of the proposed venture.... unless, of course, he did not want to hear the answers." *Nicholson*, 677 F.2d at 710–11. The facts and circumstances creating that high probability, however, did not at the same time give those defendants any *direct* knowledge of illegality, although actual knowledge could also be proven circumstantially. Thus, "if there is evidence of both actual knowledge *and* of deliberate ignorance, a *Jewell* instruction is appropriate." *Perez–Padilla*, 846 F.2d at 1183 (citing *Jewell*, 532 F.2d at 698–99) (emphasis added).

■ On the other hand, a *Jewell* instruction is not appropriate where the only evidence alerting a defendant to the high probability of criminal activity is direct evidence of the illegality itself. "[A] *Jewell* instruction should not be given when the evidence is that the defendant had *either actual knowledge or no knowledge at all* of the facts in question." *Id.* (emphasis added).

■ Thus, the conduct of a defendant who carried a package containing cocaine across a room and showed its contents to an undercover agent did not support a deliberate ignorance instruction. *United States v. Garzon*, 688 F.2d 607, 608 (9th Cir.1982). Garzon claimed to have innocently opened a bag, without knowledge of its contents. We found that the defendant's conduct "was *inconsistent* with conscious avoidance." *Id.* at 609 (emphasis in original). Garzon saw the cocaine; he either knew it was cocaine, and that he was thus participating in illegal activity, or he did not know and was therefore merely innocently present. "No evidence suggested a middle ground of conscious avoidance." *Id.* See also *United States v. Alvarado*, 838 F.2d 311 (9th Cir.) (evidence in smuggling prosecution pointed only toward

actual knowledge), *cert. denied,* 487 U.S. 1222, 108 S.Ct. 2880, 101 L.Ed.2d 915 (1988); *United States v. Pacific Hide & Fur Depot, Inc.,* 768 F.2d 1096 (9th Cir. 1985) (evidence in prosecution for illegally disposing of toxic substances demonstrated actual knowledge, not deliberate avoidance).

This case is in the *Garzon* rather than the *Jewell* mold. The evidence points, either directly or circumstantially, only to actual knowledge of illegality, not to deliberate ignorance. The government claims the deliberate ignorance theory is appropriate because Sanchez–Robles willfully declined to inspect the van despite the powerful smell. But a strong odor in a van, without more, does not normally arouse suspicions of illegality. If Sanchez–Robles recognized the smell as that of marijuana, then she knew that there was marijuana in the van, just as Garzon, if he recognized the look of cocaine, knew that the bag he held contained cocaine. If Sanchez–Robles did not, on the other hand, recognize the smell of marijuana, then she had no reason to be suspicious, just as Garzon had no reason to be suspicious if he did not recognize cocaine. There is no meaningful distinction based on the difference between sight and smell. In both cases, a defendant's senses either give rise to direct knowledge of illegality, or there is nothing to raise suspicions of illegality at all. Without suspicion of a high probability of criminal activity, the deliberate ignorance theory fails. In this case, Sanchez–Robles either had actual knowledge of the illegality or she had no knowledge at all. As in *Garzon,* there is no middle ground of conscious avoidance.

We would have a different case if there were evidence that someone had told Sanchez–Robles to drive the van across the border as a favor, or if someone had paid her to do it. One of those facts coupled with the odor might support a theory of willful blindness, because the circumstances would then be suspicious, just as they were in the smuggling cases following *Jewell.* But in this case, there is no evidence that anyone told Sanchez–Robles to do anything. The only way that smell could have aroused suspicion of illegality is if Sanchez–Robles had recognized it. And if she recognized it, then she knew of the illegality directly and was not willfully blinding herself.

■ Of course, the jury was entitled to disbelieve Sanchez–Robles and find that the circumstantial evidence showed actual knowledge of the illegal drugs. A jury may very well do that at a retrial. But for now, because of the *Jewell* instruction, we have no way of knowing whether or not this particular jury convicted her on an improper theory: that the odor in the van *should* have alerted her to illegality whether or not she actually recognized that odor.

We must determine whether the instruction was harmless error. An improperly given *Jewell* instruction requires reversal unless it was " 'logically harmless ... beyond any reasonable doubt.' " *United States v. Beckett,* 724 F.2d 855, 856 (9th Cir.1984) (per curiam) (quoting *United States v. Rea,* 532 F.2d 147, 149 (9th Cir.), *cert. denied,* 429 U.S. 837, 97 S.Ct. 107, 50 L.Ed.2d 104 (1976)). We cannot substitute our judgment for that of the trier of fact. If the "record accommodates a construction of events that supports a guilty verdict, but it does not compel such a construction," then reversal is necessary. *Id.*

We cannot say that the evidence against Sanchez–Robles is so overwhelming as to compel a guilty verdict. It is for a properly instructed jury to determine whether the circumstantial evidence of actual knowledge warrants a conviction. *Cf. United States v. Alvarado,* 838 F.2d 311, 317 (9th Cir.) (applying harmless error doctrine after finding improper *Jewell* instruction where evidence "lucidly demonstrated" actual knowledge and was "abundantly clear"), *cert. denied,* 487 U.S. 1222, 108 S.Ct. 2880, 101 L.Ed.2d 915 (1988). As in *Beckett,*

> if we held the error harmless, we would be saying that the jury *should* have found that the defendant was guilty beyond a reasonable doubt. Although it is our function to review the sufficiency of the evidence to support a guilty verdict,

it is the jury's function, not ours, to decide whether to return a guilty verdict in the first place.

724 F.2d at 856.

### III. Sufficiency of the Evidence

█ Even though we reverse for error in the *Jewell* instruction, double jeopardy concerns require us to reach Sanchez–Robles's contention of insufficient evidence. *See United States v. McKoy,* 771 F.2d 1207, 1215 (9th Cir.1985). "[B]ecause an appellate reversal of a conviction on the basis of insufficiency has the same effect as a judgment of acquittal, the Double Jeopardy Clause would preclude retrial. [Therefore,] 'the existence of other grounds for reversal does not avoid the necessity of reviewing the sufficiency of the evidence.'" *Id.* (quoting *United States v. Bibbero,* 749 F.2d 581, 586 (9th Cir.1984), *cert. denied,* 471 U.S. 1103, 105 S.Ct. 2330, 85 L.Ed.2d 847 (1985)).

█ At the conclusion of the government's case in chief, Sanchez–Robles moved for a judgment of acquittal based on insufficiency of the government's evidence, but she failed to renew her motion at the close of her case. A defendant who fails to renew such a motion has "effectively waived [her] objection to the sufficiency of the government's evidence. In this circuit, however, we may review the denial of a non-renewed motion for acquittal, but only 'to prevent a manifest miscarriage of justice.'" *United States v. Comerford,* 857 F.2d 1323, 1324 (9th Cir.1988) (citations omitted), *cert. denied,* 488 U.S. 1016, 109 S.Ct. 812, 102 L.Ed.2d 802 (1989).

Sanchez–Robles was the driver of the van and its sole adult occupant, not merely a passenger. *See United States v. Murrieta–Bejarano,* 552 F.2d 1323, 1324 (9th Cir. 1977) (jury could infer that defendant knew of drugs because he was "driver and sole occupant" of truck containing them). The quantity of drugs in the van was enormous, the odor in the van was strong and Sanchez–Robles told her daughters not to say anything to customs officials. There was a can of hairspray in the van, which might have been used to mask the odor. A cus-

toms service vehicle report contradicted Guadalupe's testimony of driving the car to Mexico and back that night, and evidence showed that Guadalupe's boyfriend's story of taking a bus and then a cab to the Sanchez–Robles apartment that night was untrue. Furthermore, there was circumstantial evidence that Sanchez–Robles had known Armando Lopez for longer than the one month she told customs officials. When viewed in the light most favorable to the government, it would not be a manifest miscarriage of justice for the jury to conclude that Sanchez–Robles knew the van contained illegal drugs when she drove it into the United States. The district court therefore properly denied Sanchez–Robles's motion for acquittal. A retrial would not violate the double jeopardy clause.

### IV. Prosecutorial Misconduct

Sanchez–Robles's remaining claims of prosecutorial misconduct and errors in evidentiary rulings lack merit.

█ During redirect examination of a government agent at trial, the prosecution asked whether Sanchez–Robles's private investigator had prevented the agent from speaking to Sanchez–Robles's daughters when the agent visited their apartment. The court sustained Sanchez–Robles's objection and later exonerated the private investigator in a hearing outside the presence of the jury. Sanchez–Robles argues that the improper question constitutes prosecutorial misconduct warranting a mistrial.

We review a motion for mistrial for abuse of discretion. *United States v. Charmley,* 764 F.2d 675, 677 (9th Cir.1985). "In assessing claims of prosecutorial misconduct, we must determine whether such misconduct occurred, whether the defendant properly preserved the issue for appeal, and whether the defendant was prejudiced by the misconduct." *United States v. Tham,* 665 F.2d 855, 860 (9th Cir.1981) (citing *United States v. Berry,* 627 F.2d 193, 196–97 (9th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 843 (1981)), *cert. denied,* 456 U.S. 944, 102 S.Ct. 2010, 72 L.Ed.2d 466 (1982).

It is undisputed on appeal that the prosecutor's question was improper and that the issue is preserved. Sanchez–Robles claims that the prejudice was severe because the government was implying to the jury that she had tried to impede the government's investigation.

"Every slight excess of a prosecutor does not require that a verdict be overturned and a new trial ordered. Prosecutorial misconduct does not require reversal unless the misconduct deprives the defendant of a fair trial." *United States v. Yarbrough*, 852 F.2d 1522, 1539 (9th Cir.) (citations omitted), *cert. denied*, 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 140 (1988). In evaluating whether the error affected the fairness of the trial, "[t]he possible prejudicial effect of alleged misconduct must be judged in the context of the entire trial." *United States v. McWilliams*, 730 F.2d 1218, 1222 (9th Cir.1984) (per curiam). If the misconduct complained of was "isolated and was not inflammatory," then reversal is not warranted. *Id.* Furthermore, the district judge's view of the context of the misconduct is highly relevant. "The district judge is in a much better position to evaluate the prosecutor's conduct and its impact. This court properly accords considerable deference to the trial court's view of such matters." *Id.*

The misconduct Sanchez–Robles complains of here was isolated, consisting of one improper question. The question merely asked about Sanchez–Robles's investigator's conduct and did not comment on that conduct directly. Nor did the question make any direct comment about Sanchez–Robles. Because the connection between the question and Sanchez–Robles was remote, the question cannot be considered inflammatory. Furthermore, Judge Keep thought the question was of minor importance in the context of the trial. At at a hearing outside the jury's presence, Judge Keep said,

I don't in any way find that there was any miscarriage of justice.... [T]hat one little questioning there ... I don't think in any way deprived her of a fair trial. It was kind of a minor point, to be honest. And I think the jury was quite

surprised when [defense counsel] jumped out and we were all huddled over here [in sidebar conference regarding Sanchez–Robles's objection].

There was no abuse of discretion in denying the motion for mistrial given the minor nature of the misconduct in the context of the entire trial.

■ Sanchez–Robles also argues that the question infringed her right to counsel by implying a conspiracy between counsel and the defense investigator to impede the government's investigation. Yet the prosecutorial conduct here is not comparable to cases where courts have found prejudice of a constitutional dimension. *Compare Donnelly v. DeChristoforo*, 416 U.S. 637, 645, 94 S.Ct. 1868, 40 L.Ed.2d 431, 438 (1974) (one instance of misconduct in extended trial does not render entire trial fundamentally unfair) *with Bruno v. Rushen*, 721 F.2d 1193, 1194–95 (9th Cir.1983) (per curiam) (infringement of right to counsel where prosecutor labels lawyer's actions "unethical and perhaps even illegal" without any supporting evidence), *cert. denied*, 469 U.S. 920, 105 S.Ct. 302, 83 L.Ed.2d 236 (1984), *and United States v. McDonald*, 620 F.2d 559, 563–64 (5th Cir.1980) (infringement of right to counsel where prosecutor implies that presence of defense counsel during search was improper). The district court properly denied the motion for mistrial based on prosecutorial misconduct.

## V. Rebuttal Evidence

Sanchez–Robles challenges the admission of customs service vehicle reports ("TECS reports") in the government's rebuttal case. She argues: (1) they are irrelevant because they failed to address issues raised in her case, (2) they are extrinsic evidence offered to impeach defense witnesses on collateral matters and (3) they are improper prior bad act evidence. There is no merit to any of these contentions.

"The district court's construction of the Federal Rules of Evidence is a question of law subject to *de novo* review. Questions of the admissibility of evidence which in-

volve factual determinations, rather than questions of law, are reviewed for an abuse of discretion." *United States v. Owens*, 789 F.2d 750, 753 (9th Cir.1986) (citations omitted), *rev'd on other grounds*, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988).

#### A. *Relevance*

■ One TECS report shows border crossing activity for Sanchez–Robles's car, the other for the Lopez van. Sanchez–Robles contends that, because the reports indicate neither who was driving either vehicle at each crossing nor whether there was any communication between the vehicles, the reports are irrelevant. Sanchez–Robles notes that she has admitted to having frequently driven to Mexico and that none of her witnesses broached the subject of how many times the van had crossed the border.

The government counters that the TECS reports address two issues raised by Sanchez–Robles's defense. First, Sanchez–Robles claimed to have known Lopez for only one month. The proximity of her car's border crossings and his van's is circumstantial evidence of a longer relationship between them. Second, Guadalupe Sanchez–Robles testified that she borrowed the family car to go out on a date. The TECS report of the Sanchez–Robles car contradicts Guadalupe's story by showing that the car did not cross back from Mexico on the night in question at the time Guadalupe claimed to have brought it back, thus casting doubt on Sanchez–Robles's explanation of why she took the Lopez van to Mexico that night. The rebuttal evidence was relevant because it addressed issues Sanchez–Robles had raised in her defense.

#### B. *Extrinsic Evidence to Impeach on a Collateral Issue*

■ Federal Rule of Evidence 608(b) prohibits a party from introducing extrinsic evidence *"solely* for the purpose of attacking the credibility of the witness." *United States v. Bosley*, 615 F.2d 1274, 1276 (9th Cir.1980) (emphasis added). Where evidence is *also* relevant to disproving a defense, it may be admitted. *See United*

*States v. Halbert*, 712 F.2d 388, 390–91 (9th Cir.1983), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984); *see also United States v. Green*, 648 F.2d 587, 596 (9th Cir.1981) (per curiam) (evidence that would be improper impeachment of credibility by extrinsic evidence may be properly admitted for another purpose). "[T]here is no rule of evidence which provides that testimony admissible for one purpose and inadmissible for another purpose is thereby rendered inadmissible; quite the contrary is the case." *United States v. Abel*, 469 U.S. 45, 56, 105 S.Ct. 465, 83 L.Ed.2d 450, 460 (1984). Because the TECS reports contradict direct evidence Sanchez–Robles presented in her defense, they did not relate to collateral matters and were not offered solely to impeach credibility. There was no abuse of discretion in admitting them.

#### C. *Prior Bad Acts*

■ Sanchez–Robles also argues that the TECS reports constitute improper evidence of prior bad acts under Federal Rule of Evidence 404(b). The TECS reports, however, show border crossings, not wrongs or acts showing character. The evidence is not within the scope of Rule 404(b). Even if the reports somehow showed bad acts, they were not offered to "prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b). The evidence is "relevant ... to rebut [the defendant's] defense." *United States v. Gering*, 716 F.2d 615, 621 (9th Cir.1983). Furthermore, "[e]vidence should not be treated as 'other crimes' evidence when 'the evidence concerning the ["other"] act and the evidence concerning the crime charged are inextricably intertwined,'" as they are here. *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir.1987) (quoting *United States v. Aleman*, 592 F.2d 881, 885 (5th Cir.1979)). The TECS reports were properly admitted.

#### VI. Cross-examination of Defense Witnesses

■ Sanchez–Robles claims error in the prosecution's cross-examination of two of

her witnesses, whom she labels character witnesses. Her labeling, however, is irrelevant; it is the nature of a witness's testimony itself that determines what type of evidence is offered. Sanchez–Robles called Sofia Gamboa and engaged her in the following colloquy:

Q: Have you ever known her [Sanchez–Robles] to be involved with drugs?

A: No, I've never known nothing—known anything

Q: Never known anything about her being involved in drugs?

A: No, I've never known anything.

Reporter's Transcript at II–165. On cross-examination, the government asked, "Did you know that the defendant had 417 pounds of marijuana in the van she was driving?" and "Did you know that she had 19 kilograms of cocaine?" *Id.* at II–167.

The government points out that Sanchez–Robles did not limit her questioning of Gamboa to Sanchez–Robles's reputation in the community or to Gamboa's opinion of Sanchez–Robles's reputation in the community. Thus, Gamboa was not a character witness. *See* Fed.R.Evid. 405 (character proved by testimony as to reputation or by opinion testimony); *see also Michelson v. United States,* 335 U.S. 469, 478, 69 S.Ct. 213, 219–20, 93 L.Ed. 168 (1948) (character witness must qualify by showing acquaintance with defendant and defendant's community).

Instead, Sanchez–Robles elicited fact-based testimony from Gamboa, namely, whether she knew the defendant to have been involved with drugs. The government was entitled on cross-examination to test the witness's personal knowledge of those facts. *See* Fed.R.Evid. 602.

Sanchez–Robles makes the same claim of error with respect to another witness, Trinidad de Ramos. The direct examination included the following:

Q: Would you say she's [Sanchez–Robles is] a law-abiding person?

A: Yes. Yes, also.

Q: Has she ever been involved in drugs?

A: No.

Q: And would you say she's an honest person?

A: Honest—honest.

Reporter's Transcript at III–177. On cross-examination, the government asked if Ramos knew what Sanchez–Robles had in her van on June 30, 1989. This question tests Ramos's personal knowledge of the fact-based question "Has she ever been involved in drugs?" which, unlike the two questions it is sandwiched between, is neither testimony as to reputation nor opinion of reputation. Because cross-examination tested the witness's personal knowledge, it was admissible under Rule 602.

As to both witnesses, therefore, the government's cross-examination was a proper testing of the witnesses' personal knowledge.

## VII. Aggregate Error

Finally, Sanchez–Robles argues that the aggregate effect of all of her claimed errors mandates reversal. The only error among those she alleges involved the *Jewell* instruction. Because the *Jewell* instruction was improper and the error that flowed from it was not harmless, we must REVERSE.