15 F.3d 1094
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Danny Ray TRIPLIN, Defendant-Appellant.
 No. 93-10018.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 3, 1993.
Decided Jan. 4, 1994.
 
 Before: ALARCON, LEAVY, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The appellant, Danny Ray Triplin, was convicted by a jury of one count of conspiracy to import heroin in violation of 21 U.S.C. Sec. 963, one count of possession with intent to distribute heroin in violation of 21 U.S.C. Sec. 841(a)(1), and one count of importation of heroin in violation of 21 U.S.C. Sec. 952. An x-ray of Triplin's luggage revealed 2.6 kilograms of heroin secreted in a false side and smeared with a sticky substance that smelled like coffee. Throughout the second trial of this case,[1] Triplin maintained he did not know the heroin was concealed in the suitcase. No identifiable fingerprints were found on the packages of heroin.
 
 
 3
 The issues on appeal are whether the district court erred in: (1) giving a Jewell, or "deliberate ignorance" instruction, and (2) refusing to admit evidence that there were no identifiable fingerprints on the package of heroin.
 
 
 4
 1. Whether the District Court Properly Gave a Jewell Instruction
 
 The court instructed the jury:
 
 5
 With regard to Count I, II and III of this indictment, you may find that the defendant Danny Ray Triplin acted knowingly if you find beyond a reasonable doubt that the defendant was aware of a high probability that drugs were contained in his suitcase and deliberately avoided learning the truth.
 
 
 6
 This instruction is known as a "conscious avoidance," "deliberate ignorance," or Jewell instruction. See United States v. Jewell, 532 F.2d 697 (9th Cir.) (en banc), cert. denied, 426 U.S. 951 (1976).
 
 
 7
 The Jewell instruction may be used where an accused may not have acted knowingly in terms of having "positive knowledge," but "the requirement of knowledge is satisfied by proof of a 'conscious purpose to avoid learning the truth.' " Id. at 701 (footnote omitted) (quoting United States v. Jacobs, 475 F.2d 270, 287-88 (2d Cir.), cert. denied, 414 U.S. 821 (1973)). In other words, "[t]o act 'knowingly' ... is ... to act with an awareness of the high probability of the existence of the fact in question. When such awareness is present, 'positive' knowledge is not required." Id. at 700. The Jewell instruction "is appropriate when the facts and circumstances surrounding the crime created a high probability of criminal activity that the defendant consciously ignored." United States v. Asuncion, 973 F.2d 769, 772 (9th Cir.1992).
 
 
 8
 We review de novo whether a district court erred in giving a Jewell instruction. United States v. Sanchez-Robles, 927 F.2d 1070, 1073 (9th Cir.1991).
 
 
 9
 We have held that the Jewell instruction is not appropriate when the evidence suggests the defendant had either actual knowledge or no knowledge at all. Id. at 1074. Triplin argues that "because the only evidence introduced by the Government was Triplin's actual possession of the heroin and it alleged and sought to prove that Mr. Triplin had actual knowledge of the presence of the heroin," and because "Mr. Triplin specifically testified that he did not think that anything suspicious or illegal was being done," the evidence shows that Triplin had either actual knowledge or no knowledge at all and therefore, the Jewell instruction was inappropriate. We have held that " 'if there is evidence of both actual knowledge and of deliberate ignorance, a Jewell instruction is appropriate.' " Sanchez-Robles, 927 F.2d at 1074 (quoting United States v. Perez-Padilla, 846 F.2d 1182, 1183 (9th Cir.1988) (per curiam)). Thus, we must decide if this case presents circumstances of: (1) "actual or no knowledge" or (2) "actual knowledge and deliberate ignorance." The latter applies.
 
 
 10
 First, Triplin admits that the government introduced evidence of his actual knowledge. Second, a test of whether a Jewell instruction is appropriate is whether there were suspicious circumstances that would alert a reasonable person to a high probability of criminal activity:
 
 
 11
 Our cases upholding a Jewell instruction involved facts and circumstances creating a high probability of criminal activity that the defendant then ignored. In our cases disallowing a Jewell instruction, there were no suspicious circumstances surrounding the activity beyond direct evidence of the illegality itself, which goes only to actual knowledge.
 
 
 12
 Id. at 1073 (emphasis added).
 
 
 13
 Among the suspicious circumstances present in this case are: (1) while Triplin spent six months in the Phillipines, he admitted to having no employment and a limited budget; (2) Triplin admitted to arranging for Lagoye to send him money from the United States on an as-needed basis while he was in the Phillipines; (3) Triplin stated that Lagoye always seemed to have a great deal of money; (4) Triplin admitted that he repeatedly asked Lagoye to wire him money through Western Union; (5) Triplin admitted he received a total of $6000 from Lagoye, of which approximately $4800 was sent by Lagoye to Triplin through numerous Western Union wire transfers; (6) Triplin admitted that Lagoye used false names to identify himself when sending the money; (7) Lagoye never turned down Triplin's requests for money; (8) when Lagoye arrived in Cebu City, the Phillipines, Lagoye immediately paid Triplin's outstanding hotel bill of approximately $1000; (9) even though Triplin had his own suitcase, Lagoye gave him a blue suitcase, explaining that Triplin must use the suitcase but return it to Lagoye upon returning to the United States; and (10) Triplin received the letter from Lagoye found in the luggage instructing him not to discuss "the project" with anybody; to avoid exposure at the American Embassy; to have an answer prepared for Customs as to what he was doing for six months in the Phillipines; and to change hotels "to avoid old faces getting nosy or even getting involved with the order of things;" and stating that "I believe in God that the successful completion of this project like the other girl did would put us financially free henceforth." Triplin's show of ignorance leads to only two conclusions: (1) that Triplin actually knew he was involved in the criminal activity and continued that activity while feigning ignorance, or (2) that Triplin consciously chose to ignore the facts and failed to take any action for fear it would confirm what was staring him in the face. Because there is evidence in this case of both actual knowledge and of deliberate ignorance, the district court properly gave a Jewell instruction. See Sanchez-Robles, 927 F.2d at 1074.
 
 
 14
 We have explained that facts and circumstances where a Jewell instruction is appropriate, while creating a high probability of criminal activity, do not at the same time give direct knowledge of illegality. Id. at 1074-75. Triplin argues that evidence of his change of demeanor at the San Francisco airport shows he had actual, or direct, knowledge as opposed to deliberate ignorance. This argument fails. We have concluded that a defendant's change in demeanor upon examination of his suitcase that contained cocaine supported a reasonable inference of both actual knowledge and deliberate ignorance. United States v. Alvarado, 838 F.2d 311, 315 (9th Cir.1987) ("[Alvarado's] nervousness and turning pale, by themselves, could support either theory--either that he knew, or was afraid to find out."), cert. denied, 487 U.S. 1222 (1988).
 
 
 15
 Unlike United States v. Mapelli, 971 F.2d 284 (9th Cir.1992), the evidence supported an inference of deliberate ignorance. In Mapelli, the only reasonable inferences were actual knowledge or innocence. The jury could reasonably have concluded that Triplin did not know of the heroin because he deliberately avoided confirming his suspicion that there was heroin in the suitcase. Instead of inferring that he was lying, as the prosecutor urged, the jurors might have decided that Triplin was telling the truth about his girlfriend packing his suitcase before he lifted it and discovered how unusually heavy it was. They knew from the professional way the compartment was sealed that Triplin had probably not looked inside it. They might have inferred that he had his girlfriend pack the suitcase before he lifted it to avoid confirming how heavy it was, and that Triplin avoided asking Lagoye what was in the suitcase because he did not want to hear the answer. If the jury drew these reasonable inferences from the evidence, then they could conclude under the Jewell instruction that Triplin was truthful, and without actual knowledge of the heroin, yet guilty.
 
 
 16
 The Jewell instruction was appropriate given the evidence of both actual knowledge and deliberate ignorance.
 
 
 17
 2. Whether the District Court Abused Its Discretion by Excluding Expert Testimony That There Were No Identifiable Fingerprints on the Heroin Package
 
 
 18
 Triplin argues the district court abused its discretion by refusing to admit what he argues is relevant evidence: an expert's testimony that Triplin's fingerprints were not on the plastic package containing heroin.
 
 
 19
 We review a trial court's exclusion of expert testimony for manifest error or an abuse of discretion. United States v. Rubio-Villareal, 927 F.2d 1495, 1502 (9th Cir.1991), vacated in part on other grounds, 967 F.2d 294 (9th Cir.1992) (en banc). Decisions regarding the relevancy of evidence are also reviewed for an abuse of discretion. United States v. Schaff, 948 F.2d 501, 505 (9th Cir.1991). "Decisions whether evidence is relevant ... are committed to the [trial] court's sound discretion." United States v. Gilley, 836 F.2d 1206, 1213 (9th Cir.1988).
 
 
 20
 Under the abuse of discretion standard, we may not reverse unless we have a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. United States v. Plainbull, 957 F.2d 724, 725 (9th Cir.1992) (reviewing dismissal on abstention grounds); Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec, 854 F.2d 1538, 1546 (9th Cir.1988) (per curiam) (reviewing imposition of discovery sanctions). We cannot simply substitute our judgment for that of the lower court. United States v. Egbuniwe, 969 F.2d 757, 761 (9th Cir.1992).
 
 
 21
 We have held that "the fact of unidentifiable fingerprint smudges found on the suitcase does not tend to prove or disprove any substantial element of the alleged crimes. The proffered evidence was not relevant." United States v. Navarro-Varelas, 541 F.2d 1331, 1334 (9th Cir.1976), cert. denied, 429 U.S. 1045 (1977). The district court cited Navarro-Varelas. To conclude that no fingerprints at all are equivalent to unidentifiable fingerprint smudges for purposes of proof of a substantial element of a crime is not an abuse of discretion. The district court's exclusion of this evidence was proper.
 
 
 22
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The first trial ended in a mistrial. RT 9/14/92 at 4-5