**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Karen D. THOMPSON, Defendant–**
**Appellant.**

**No. 93–50537.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 8, 1994.

Decided Sept. 14, 1994.

---

Gerald C. Salseda, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant Thompson.

Rob B. Villeza, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: FLETCHER, CANBY and HALL, Circuit Judges.

FLETCHER, Circuit Judge:

■ Karen Thompson, who was arrested at an airport after cocaine was found in her suitcase, appeals her conviction and sentence for possession of cocaine with intent to distribute, a violation of 21 U.S.C. § 841(a)(1).

She argues that the district court erred in preventing her from commenting at trial on the lack of fingerprint and other evidence tying her to knowledge of the contents of the suitcase. She also argues that the district court wrongly concluded it had no authority to depart downward on the basis of racially disparate impact of the crack cocaine provisions of the sentencing guidelines.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We reverse Thompson's conviction and remand for a new trial. We do not reach Thompson's sentencing issue.

## FACTS AND PROCEDURAL HISTORY

On January 12, 1993, Thompson was observed by Los Angeles police officers at Los Angeles International Airport. She exited a car driven by an unidentified man, took a suitcase which he pulled out of the trunk, and checked the suitcase with a curbside skycap. The officers claim she appeared nervous, and repeatedly looked around in all directions. She proceeded inside the terminal.

Two officers followed her to her gate, and one approached her there. After questioning her briefly, they secured her permission to search the suitcase. They discovered 4.2 kilograms of cocaine base, and 488 grams of cocaine powder, along with some clothing. When informed she was under arrest, Thompson gave her real name. However, the name tags on her suitcase and another checked bag (which contained her clothing and personal effects) read "Carla Smith;" she told officers this was her grandmother's name and that she occasionally used it. One luggage tag gave a fictitious address; the other gave no address. Officers discovered 15 small "ziploc" baggies in her jacket pocket. She had a one-way ticket to Cleveland, purchased for cash under the name Carla Smith. She had $29 in cash.

Thompson was charged with one count of possession of cocaine with intent to distribute, under 21 U.S.C. § 841(a)(1). Her three-day trial began on March 22, 1993. Her defense was that her boyfriend in Cleveland had asked her to bring him a suitcase full of clothing, which a friend of his in Los Angeles

was to give to her.[1] Thompson thus claimed she was an unwitting "mule" who had no knowledge that the suitcase contained cocaine. The government did not submit any fingerprint evidence or any other physical evidence (effects of Thompson or the like) taken from the inside of the suitcase at trial. It sought to establish knowledge only through circumstantial evidence: Thompson travelled under a false name, acted nervous at the airport, had a one-way ticket, and had in her jacket pocket fifteen baggies of a type often used to package cocaine for sale. The trial resulted in a hung jury. A retrial was set for April 27, 1993.

On April 15, 1993, the government filed a motion *in limine* to exclude evidence of the lack of fingerprints and other "scientific" evidence. This motion was filed in response to Thompson's defense strategy at the first trial, which involved cross-examining the government's law-enforcement witnesses about whether they had searched for fingerprints or other "scientific evidence" inside the suitcase which contained the cocaine. Defense counsel then argued in closing that the officers had been negligent and careless in not searching for fingerprints and other evidence inside the suitcase. *See* SER 17–20 (transcript). He claimed that the government should be "pointing the finger" at itself rather than at Thompson, and even implied that it might have deliberately "lost" evidence. *Id.* The district court granted the government's motion, and forbade defense counsel to cross-examine government witnesses concerning the lack of fingerprints, and to comment on that lack during closing argument. A second three-day trial resulted in a guilty verdict.

Sentencing hearings were held on June 23, 1993, and July 6, 1993. Thompson argued for downward departures based on a number of factors, including overrepresentation of criminal history (she was in Category II

because of one petty theft conviction) and the disparate impact on African–Americans of the crack cocaine guidelines. At the hearing on July 6, the district court rejected all of her arguments except the one based on criminal history. The court adjusted Thompson's criminal history category to I, and sentenced her to the bottom of the guidelines range: 188 months.

### DISCUSSION

■ Thompson argues that the district court erred in granting the government's *in limine* motion to preclude her cross-examination and argument concerning the lack of fingerprint and other evidence.[2] Whether the lack of physical evidence is relevant to a "no knowledge" defense is a predominately legal question, subject to de novo review. *See United States v. Chu Kong Yin,* 935 F.2d 990, 994 (9th Cir.1991) (evidentiary rulings reviewed de novo if legal issues predominate).

In *United States v. Navarro–Varelas,* 541 F.2d 1331 (9th Cir.1976), *cert. denied,* 429 U.S. 1045, 97 S.Ct. 751, 50 L.Ed.2d 759 (1977), defendant Navarro arrived at Los Angeles International Airport from Medellin, Columbia and was searched by customs agents. About two kilograms of cocaine were discovered in a secret compartment in his suitcase. He was charged with importation and possession with intent to distribute. His defense was lack of knowledge: he claimed to have met a man in Medellin who told him he could arrange a job in Los Angeles for him and who made all arrangements for his flight to Los Angeles. These arrangements allegedly included lending Navarro a suitcase—which turned out to be the one containing the hidden cocaine. At trial, Navarro offered into evidence a stipulation signed by the parties that the secret com-

---

1. Neither the boyfriend nor his friend testified at trial.

2. The district court did not state the basis for its ruling. However, it appears to be a relevance determination, and the parties argue it as such. While Thompson's claim is phrased in terms of the Fifth and Sixth Amendments to the United States Constitution, she argues exclusively that

the lack of finger prints and other evidence was *relevant* to her theory of the defense. The one Ninth Circuit case considering a similar issue, *United States v. Navarro–Varelas,* 541 F.2d 1331 (9th Cir.1976), *cert. denied,* 429 U.S. 1045, 97 S.Ct. 751, 50 L.Ed.2d 759 (1977), analyzed appellant's Sixth Amendment claim in terms of the relevance of the excluded evidence.

partment in the suitcase had been examined for fingerprints and that only unidentifiable "ridges" were discovered. *Id.* at 1334. The district court refused to admit the stipulation on the grounds that it was irrelevant because it established nothing. On appeal, Navarro argued that the district court had thus deprived him of his Sixth Amendment right to present evidence on his own behalf. This court rejected this argument, saying,

> [w]e agree with the District Court that the fact of unidentifiable smudges found on the suitcase does not tend to prove or disprove any substantial element of the alleged crimes. The proffered evidence was not relevant, and the District Court did not err in refusing the offer. Federal Rules of Evidence 402.

*Id.* (citation omitted).

The government reads *Navarro–Varelas* broadly to support the proposition that "the absence of identifiable fingerprints does not tend to prove or disprove any element of the alleged crime and is, therefore, irrelevant." Appellee's Brief at 14.. The government argues that this principle applies to the lack of other physical evidence as well as fingerprints. The government's proposed interpretation of *Navarro–Varelas* is thus that the absence or lack of evidence is never relevant to a "no knowledge" defense to a possession charge.

However, *Navarro–Varelas* is better read as a case about *inconclusive* evidence rather than about the *lack* of evidence. The court there held that *"unidentifiable* fingerprint *smudges"* did not tend to prove or disprove any element of the charged crimes. 541 F.2d at 1334 (emphasis added). This holding was no doubt based upon the court's reasoning that the "smudges" established only the self-evident fact that *someone* had hidden the cocaine in the suitcase, and did nothing to prove whether or not that person was Navarro. Although Navarro's proposed stipulation concerning the "smudges" was rejected, the ruling does not suggest that he would not have been allowed to comment, in closing argument, on the *lack* of fingerprint evidence

tying him to the secret compartment. We suggest he would have been entitled to remind the jury that while the government had presented circumstantial evidence that he knew about the secret compartment, it had failed to present any direct physical evidence. *See* 9th Cir. CJI 3.03 ("[a] reasonable doubt ... may arise from ... a lack of evidence").

Our reading of *Navarro–Varelas* is supported by more recent cases from other circuits. In *United States v. Hoffman,* 964 F.2d 21 (D.C.Cir.1992), the defendants were charged with possession of narcotics and they argued in their defense that the drugs had been "planted" in their luggage. In support of this "no knowledge" theory, they relied on the fact that the government had introduced no fingerprint evidence at trial. The D.C. Circuit held that

> [i]t is permissible for a defense attorney to point out to the jury that no fingerprint evidence has been introduced and to argue that the absence of such evidence weakens the Government's case.

*Id.* at 26. The Sixth Circuit has similarly held that defense counsel may comment on the government's failure to present fingerprint evidence:

> [i]n every criminal case, the mosaic of evidence that comprises the record before a jury includes both the evidence *and* the lack of evidence on material matters. Indeed, it is the absence of evidence upon such matters that may provide the reasonable doubt that moves a jury to acquit.

*United States v. Poindexter,* 942 F.2d 354, 360 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 615, 116 L.Ed.2d 637 (1991), *amended on other grounds sub nom. United ed States v. Day,* 956 F.2d 124 (6th Cir.1992). The *Poindexter* court held that the lack of fingerprint evidence was a relevant fact under Fed.R.Evid. 401. *Id.; see also United States v. Obiukwu,* 17 F.3d 816, 821 (6th Cir.1994) (accepting without comment that defense counsel could argue to the jury that no fingerprint evidence had been introduced).[3]

---

**3.** *See also United States v. Latimer,* 511 F.2d 498, 502–03 (10th Cir.1975) (defense counsel may comment on government's failure to introduce surveillance tapes of bank robbery for which appellant was charged).

Because evidence comes in various forms, some stronger and some weaker, a defendant is entitled to argue to the jury that the government's failure to present a particular type of strong evidence against her—e.g., fingerprints—weakens its case. When the defense is lack of knowledge, the lack of fingerprint evidence is a relevant fact which may be elicited by defense counsel during direct or cross examination of witnesses, and incorporated into counsel's closing statement. The district court therefore erred in granting the government's *in limine* motion to prohibit Thompson from eliciting and commenting upon the lack of fingerprint evidence in her case.

We note that the district court would have been within its discretion had it entered an order limiting the *use* to which defense counsel could put the lack of fingerprint evidence. *See Hoffman*, 964 F.2d at 23–26 (holding that while counsel may argue that the lack of fingerprint evidence weakens the government's case, counsel may not go on to suggest negative, speculative inferences about the reliability of police investigative practices or unwarranted comments on the credibility of government witnesses). Here, in the first trial Thompson's counsel sought to use the lack of fingerprint evidence as "a springboard for arguing facts not in evidence." *Id.* at 26. He implied that police had been negligent in their investigative practices, had purposefully lost exculpatory evidence, and had "laughed off" their duty to investigate the case. Reporter's Transcript of March 22, 1993, p. 50.

Finally, the government has by no means convinced us that this error was harmless. Under the harmless error doctrine, we will not reverse a nonconstitutional error unless it more probably than not affected the verdict.[4] *Yin*, 935 F.2d at 994. Here, Thompson's first trial led to a hung jury while the second trial, in which she was not allowed to comment on the lack of fingerprints, resulted in a conviction. That is persuasive evidence that the district court's error affected the verdict.[5]

Because the district court committed prejudicial error in precluding Thompson from commenting on the lack of fingerprint and other evidence tending to establish her knowledge of what was in the suitcase, we vacate her conviction and remand for a new trial. We do not reach the portion of her appeal in which she argues that the district court had authority to depart downward based on the racially disparate impact of the sentencing guidelines' crack cocaine provisions.

REVERSED; VACATED; and REMANDED.

---

4. As discussed above, we are treating this error as nonconstitutional. Were it a constitutional error, the government would have the more onerous burden of establishing its harmlessness beyond a reasonable doubt. *See, e.g., Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986).

5. The government admittedly had strong circumstantial evidence of Thompson's complicity in the scheme, but it had no direct evidence. Evaluating circumstantial evidence is undeniably a core jury function. Thus, the fact that a rational jury could have gone either way in this case only reinforces our conclusion that the district court's error was prejudicial.

