388 A.2d 1084

**COMMONWEALTH of Pennsylvania**

**v.**

**Clifton WRIGHT, Appellant.**

Superior Court of Pennsylvania.

Submitted June 13, 1977.

Decided July 12, 1978.

John W. Packel, Assistant Public Defender, and Benjamin Lerner, Defender, Philadelphia, for appellant.

Steven H. Goldblatt and Deborah E. Glass, Assistant District Attorneys, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

The instant appeal arises from appellant's conviction, following a trial by jury, of rape for which appellant received a sentence of seven to twenty years. Appellant was also found guilty of simple assault, but sentence was suspended on that charge. Appellant claims that the court erred in two respects during the trial. First, appellant argues the court denied him his right to a public trial when, during cross-examination of the victim, the court ordered all spectators from the courtroom. Second, appellant argues that the court erred in excluding from appellant's summation any reference to the Commonwealth's failure to produce fingerprint evidence. Finding no error in either respect, we will affirm.

On the evening of November 21, 1975, at approximately 10 P.M., Bettye Clayton was at home watching television when appellant, Clifton Wright, knocked at her door. Wright, who was the nephew of Ms. Clayton's boyfriend, had known Ms. Clayton for eight or nine years and asked her to admit him. He claimed a relative had been seriously injured in an accident and needed medical attention. Ms. Clayton, a fifty-nine year old woman, who was dressed simply in underwear and a housecoat, admitted Wright believing his story to be true, but as she began to telephone the hospital, Wright grabbed her from behind and pushed her to the floor. Threatening to kill her, Wright demanded Ms. Clayton give him money and her car keys. Wright then took off his jacket and ordered Ms. Clayton to lie on a day bed where he forcibly raped her. The act having been completed, Wright wiped himself with some rags which were convenient and went upstairs to get Ms. Clayton's purse. Ms. Clayton then ran, naked and screaming, to the home of a neighbor who telephoned the police. When the police arrived at the scene they found Wright's jacket, the rags with spermatozoa on

them, and Ms. Clayton's panties, spotted with blood and spermatozoa. The upstairs of the home had been ransacked. Subsequent medical tests confirmed the presence of spermatozoa in Ms. Clayton's genital area.

During the trial Ms. Clayton recounted the foregoing events, but only with great difficulty emotionally. During her testimony on several occasions she began to cry and drank water during respites from her ordeal to calm down. Indeed, prior to beginning his cross-examination, defense counsel requested that court adjourn until the next day so that Ms. Clayton might regain her composure. Early on the second day of trial, during cross-examination, Ms. Clayton broke down again. During the recess caused by her inability to go on, Ms. Clayton informed the court that she was scared because Wright's family had threatened her. Because of the threat and the manifest difficulty Ms. Clayton was having in testifying, the court ordered that the courtroom be cleared of spectators for the duration of her testimony, and defense counsel objected.

■■■ Appellant's first argument, that he was denied his right to a public trial, rests on both state and federal guarantees which, while important, are not beyond limitation. *Commonwealth v. Stevens,* 237 Pa.Super. 457, 352 A.2d 509 (1975). Among the circumstances which justify the court in closing the courtroom to spectators are threats of violence to witnesses, and the embarrassment and discomfiture to victims of crimes which require the explication of lurid details. See, e. g., *Commonwealth v. Burton,* 459 Pa. 550, 558, 330 A.2d 833 (1975); *Commonwealth v. Principatti,* 260 Pa. 587, 598, 104 A. 53 (1918); *Commonwealth v. Stevens,* 237 Pa.Super. at 466–68, 352 A.2d 509. Both these circumstances were present in the instant case, as was the obvious difficulty Ms. Clayton was having in testifying. Therefore, this case is readily distinguishable from *United States v. Kobli,* 172 F.2d 919 (3d Cir. 1949) where the court not only lacked so compelling a basis for closing the courtroom, but did so for the entire duration of the trial. Hence, we find no error in the court's closing the courtroom in the instant case. *Commonwealth v. Stevens,* supra.

■ Appellant's remaining assignment of error, that the court improperly circumscribed his closing argument, is also without merit. During summation, defense counsel argued as follows:

"Another thing that is missing, according to Miss Clayton's testimony the man who was in her house running all over the house, would have left fingerprints everywhere."

When the Commonwealth objected, the court sustained the objection and told the jury to disregard this statement. Appellant argues that this was error because summation is an integral part of a trial during which the accused is allowed to argue all reasonable inferences to the jury which are favorable to his case. *Commonwealth v. Thacker,* 328 Pa. 402, 405, 194 A. 924 (1937); *Commonwealth v. Brown,* 309 Pa. 315, 321, 164 A. 726 (1933). Appellant maintains that it was reasonable to infer that if the Commonwealth had incriminating fingerprints they would have introduced them; and its failure to produce such evidence entitles the accused to the inference that such evidence, if it existed, would exculpate him. Cf. *Commonwealth v. Moore,* 453 Pa. 302, 309 A.2d 569 (1973); American Bar Association, Standards Relating to the Prosecution and Defense Function, § 7.8 (1971). First of all, applying this rule to fingerprint evidence is logically fallacious, because the absence of appellant's fingerprints is not exculpatory *per se* and might be explained for any one of many reasons consistent with his guilt. In any event, in the instant case counsel's argument was improper because no factual basis had been laid for it. Despite the presence of the investigating officers at the trial, no questions were asked of them concerning fingerprint evidence or the reasons why no such evidence had been proffered. In effect, then, defense counsel was arguing inferences based upon facts not of record and, in this regard, his argument was purely conjectural and improper. See American Bar Association, Standards Relating to the Prosecution and Defense Function, § 7.9 (1971). To permit such argument by the defense would simply invite an equally conjectural explanation by the Commonwealth. It is obvi-

ous that matters outside the record, if allowed to be argued indiscriminately, would obfuscate rather than delineate the clear issues present in a case. Therefore, the court acted properly in sustaining the Commonwealth's objection and instructing the jury to disregard the statement.

Judgment of sentence affirmed.

SPAETH, J., concurs in the result.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.