UNITED STATES of America

v.

John HOFFMAN, a/k/a John Joseph, Appellant.

UNITED STATES of America

v.

Bertsfield SMITHEN, Appellant.

Nos. 90–3205, 90–3236.

United States Court of Appeals, District of Columbia Circuit.

Argued March 31, 1992.

Decided May 29, 1992.

Peter L. Goldman, Washington, D.C. (appointed by the Court) for appellant John Hoffman, in No. 90–3205. Gregory B. English, Alexandria, Va. (appointed by the Court), was on the brief for appellant.

Thomas F. Dunn, Fort Worth, Tex. (appointed by the Court), for appellant Bertsfield Smithen, in No. 90–3236.

Albert A. Herring, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Roy W. McLeese III and Thomas J. Hibarger, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee, in Nos. 90–3205 and 90–3236. Elizabeth Trosman, Asst. U.S. Atty., Wash-

ington, D.C., also entered an appearance for appellee.

Before: WALD, EDWARDS and HENDERSON, Circuit Judges.

Opinion for the court filed PER CURIAM.

PER CURIAM:

John Hoffman and Bertsfield Smithen appeal their convictions by a jury for narcotics offenses.[1] Their appeals raise one issue that merits discussion: whether a defense lawyer must lay some evidentiary foundation before arguing in closing that the jury should infer, based upon the absence of fingerprint evidence, that such evidence could have been obtained and would have been exculpatory. We answer that question in the affirmative, and therefore we affirm the convictions.

## I. BACKGROUND

The facts of this case are straightforward and uncontested on appeal. On the afternoon of February 14, 1990, Hoffman and Smithen (collectively, "Appellants") went to Penn Station in New York City to catch an Amtrak train bound for Charlotte, North Carolina. While in the station, they attracted the attention of two Amtrak police officers, who were on "call down" duty that day.[2] The two officers followed Appellants aboard the Charlotte-bound train; there, they conducted brief, consensual interviews with Hoffman and Smithen but made no request to search the luggage belonging to either. Unsatisfied by the responses they received, the officers proceeded to "call down" to the Amtrak police in Washington and recommend further interviews with Appellants.

At approximately 6:05 p.m. on the same day, five officers boarded Appellants' train during its stop-over in Washington. At the time they boarded, the train engine was being switched from electric to diesel power; as a result, the lights in the cabin were quite dim. The officers wore plainclothes and their weapons were concealed.

Once on board, two of the officers, Detective Hanson and Investigator Lawson, approached Hoffman. Hanson positioned himself in the aisle near Hoffman's seat, while Lawson stood a couple of rows behind Hoffman. After identifying himself as a police officer and obtaining consent to speak with Hoffman, Hanson asked to see Hoffman's train ticket and some identification; he examined both documents and returned them to Hoffman. Hanson then explained that he was assigned to the Drug Interdiction Unit and asked if he could search Hoffman's luggage. Hoffman consented, and Hanson proceeded to search the red duffel bag that Hoffman had identified as his. Inside, Hanson observed a pair of tennis shoes with socks stuffed into them; closer examination revealed plastic bags containing cocaine base hidden inside the socks. Hanson thereupon arrested Hoffman.

As these events were transpiring, Detective Beard and Investigator Cook were in the process of following much the same routine with Smithen. Beard approached Smithen, and Cook took a position a row or two away. Beard identified himself as a police officer, and Smithen agreed to speak with him. On request, Smithen produced his train ticket, which Beard examined and returned. Beard then requested permission to search Smithen's luggage. Smithen denied carrying narcotics, but offered his bag to be searched. Upon examining the bag, Beard found a "Dial" deodorant can on top of some clothes. He removed it from the bag and twisted the bottom, which proved to be false. Inside were numerous packets containing cocaine base and others containing cocaine. A post-arrest search of Smithen's person revealed a

---

1. Hoffman and Smithen were tried jointly in the District Court. Their appeals were consolidated by this court.

2. "Call down" is a police procedure whereby drug interdiction agents observe and question individuals in train (and bus) terminals but do not conduct searches or make arrests; if their suspicions are aroused, they call other agents at scheduled stopping points along the train route and recommend further investigation. *See United States v. Smithen*, 738 F.Supp. 15, 16 (D.D.C.1990).

small bag of marijuana concealed in his crotch area.

On March 15, 1990, Appellants were indicted for possession of more than 50 grams of cocaine base with intent to distribute; Smithen was also charged separately with possession of cocaine with intent to distribute. Appellants subsequently moved to suppress the narcotics seized on the train, claiming Fourth Amendment violations, but the District Court denied the motions. *See United States v. Smithen,* 738 F.Supp. 15 (D.D.C.1990).

On June 21, 1990, Appellants went to trial before a jury on the narcotics charges. At trial, the Government's case consisted primarily of the testimony of the arresting officers, who recounted the events that occurred aboard the train. None of the Government's witnesses made any mention of fingerprint evidence, and the attorneys representing Hoffman and Smithen did not cross-examine on that point.

During the defense case, each appellant took the stand in his own defense. Hoffman denied owning the drugs found in his travel bag and indicated that they might have belonged to the passenger occupying the seat beside him, who left the train at or near the time that the officers boarded. *See* Trial Tr. (June 21, 1990) at 127–29, 132 ("Tr. I"). Smithen likewise disclaimed ownership of the narcotics found in the "Dial" can, implying that the can might have been put into his bag by someone else while he was having a snack in the lounge car. *See id.* at 89–91.

During closing argument, Hoffman's counsel advanced the theory that the un-

known passenger who had been seated next to Hoffman was actually a drug courier who left the narcotics under a pillow on his seat when he saw the officers enter the train in Washington. According to Hoffman's counsel, Detective Hanson lied about finding the drugs in Hoffman's bag in order to be able to secure a conviction. Hoffman's attorney then brought up the question of fingerprint evidence.

If Officer Hanson had told you the truth in this case, wouldn't he after sending the drugs to the laboratory to be analyzed have sent them to be examined for fingerprints?

I mean I wouldn't be here making any argument at all if this bag containing cocaine had been examined by the police lab like they should have done.

Trial Tr. (June 22, 1990) at 18 ("Tr. II").

The Government objected to this line of argument on the ground that the record contained no evidence regarding whether the plastic bags containing the narcotics had been tested for fingerprints and, if so, what result was obtained. The District Court sustained the objection and instructed the jury as follows: "Ladies and gentlemen, counsel may only argue evidence in the case, and there is no evidence of fingerprints. Therefore, I exclude that part of his argument. Disregard it." *Id.* at 22.

The jury returned verdicts of guilty against Hoffman and Smithen on all counts. They now appeal.

## II. DISCUSSION

■■■ Appellants raise several contentions on appeal.[3] Of these, the only issue

**3.** In addition to the claim discussed in the text, Appellants argue that: (1) they were illegally "seized" by the police during the interviews aboard the train in Washington; and (2) their consents to the searches were involuntary because they were not warned of their right to refuse consent. For these reasons, Appellants assert, the District Court erred in denying their motions to suppress.

We find no merit in these contentions. Appellants' claim of "seizure" is foreclosed by *Florida v. Bostick,* ― U.S. ―, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), and *United States v. Lewis,* 921 F.2d 1294 (D.C.Cir.1990), which plainly validate the kind of non-coercive interviews that

occurred in this case. Although the dim lighting and somewhat cramped conditions in the train may have limited Appellants' "freedom to leave" to some degree, these circumstances were not of the officers' making and therefore do not invalidate the otherwise lawful police conduct. *See Bostick,* 111 S.Ct. at 2386–87; *Lewis,* 921 F.2d at 1299. Appellants' claim that their consents to the searches were involuntary is similarly unavailing. There is no requirement that the police warn an individual of the right to withhold consent to a search, *see Schneckloth v. Bustamonte,* 412 U.S. 218, 231–33, 93 S.Ct. 2041, 2049–50, 36 L.Ed.2d 854 (1973); and, on the record before us, we have no difficulty in con-

meriting discussion is the claim that the District Court committed reversible error by preventing defense counsel from arguing to the jury that it should draw various adverse inferences against the Government based upon the Government's failure to introduce fingerprint evidence.[4] We address the issue primarily to clarify the law of the circuit on this evidentiary matter.

As Appellants recognize, *see* Joint Brief of Appellants at 12, our review of the District Court's decision to restrict Hoffman's closing argument is deferential. The trial court has "broad discretion in controlling the scope of closing argument," and an abuse of that discretion will be found only where the effect of the trial court's ruling is to "prevent[ ] defense counsel from making a point essential to the defense." *United States v. Sawyer,* 443 F.2d 712, 713 (D.C.Cir.1971). On the record before us, we find no abuse of discretion in the District Court's ruling; indeed, we find no error at all.

It is true, as Hoffman and Smithen contend, that defense attorneys must be permitted to argue all reasonable inferences from the facts in the record. *See United States v. DeLoach,* 504 F.2d 185, 190 (D.C.Cir.1974). This includes the "negative inferences" that may arise when a party fails to call an important witness at trial, or fails to produce relevant documents or other evidence, and it is shown that the party has some special ability to produce such witness or other evidence. *See United States v. Pitts,* 918 F.2d 197, 199–200 (D.C.Cir.1990); *see generally* EDWARD W. CLEARY, MCCORMICK ON EVIDENCE § 272 (1984). It is equally well-established, however, that "counsel may not premise arguments on evidence which has not been admitted." *Johnson v. United States,* 347

F.2d 803, 805 (D.C.Cir.1965); *accord United States v. Hawkins,* 595 F.2d 751, 754 (D.C.Cir.1978), *cert. denied,* 441 U.S. 910, 99 S.Ct. 2005, 60 L.Ed.2d 380 (1979); *United States v. Gibson,* 513 F.2d 978, 980 (6th Cir.1975). Thus, it is improper for either the prosecutor or defense counsel to "ma[ke] statements as to facts not proven" or to put his or her "personal knowledge and belief ... on the scales." *United States v. Latimer,* 511 F.2d 498, 503 (10th Cir.1975).

In this case, the only "evidence" on the fingerprint issue was purely negative—*i.e.,* the fact that the Government did not introduce any fingerprint evidence at all. As the Government concedes, the absence of such evidence is a relevant "fact" which properly could have been argued to the jury. *See* Brief for Appellee at 15, 17 n. 13; *see also United States v. Poindexter,* 942 F.2d 354, 360 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 615, 116 L.Ed.2d 637 (1991), *modified sub nom. United States v. Day,* 956 F.2d 124 (6th Cir.1992). Thus, it would not "have been improper for defense counsel to point out to the jury that the government had not presented any evidence concerning fingerprints." Brief for Appellee at 17 n. 13.

The record reveals, however, that Hoffman's attorney attempted to go far beyond merely pointing out the lack of fingerprint evidence and arguing that its absence weakened the Government's case. Rather, his argument was that because the Government had not produced fingerprint evidence, the jury should infer that: (1) the police did not attempt to obtain fingerprints from the plastic bags containing the narcotics; (2) this failure violated standard police procedures; and (3) the fingerprint evidence, if obtained, would have been fa-

---

cluding that the trial court did not clearly err in finding that Appellants consented voluntarily to the search of their luggage. *See United States v. Maragh,* 894 F.2d 415, 420 (D.C.Cir.) (holding that voluntariness of consent is question of fact reviewed under clear error standard), *cert. denied,* —— U.S. ——, 111 S.Ct. 214, 112 L.Ed.2d 174 (1990).

**4.** We doubt that Smithen has preserved this issue for appeal. Only Hoffman's counsel at-

tempted to argue the lack of fingerprint evidence to the jury, and it appears that Smithen's attorney did not object to the trial court's ruling restricting Hoffman's argument. *See* Tr. II at 18–22. We need not resolve the question of waiver definitively, however, because we conclude that the District Court did not err—much less commit "plain error"—by ruling as it did. *See* FED.R.CRIM.P. 52(b); *United States v. Bass,* 535 F.2d 110, 116 (D.C.Cir.1976).

vorable to Hoffman. *See* Tr. II at 18 (closing argument of Hoffman's counsel). Defense counsel further asserted that these three inferences supported the additional inference that Officer Hanson's trial testimony was false. *See id.*

By making these assertions, Hoffman's attorney moved from arguing fair inferences from the record to arguing the existence of facts *not* in the record—*viz.,* that the police did not look for fingerprints, that fingerprints could have been obtained from the plastic bags containing the narcotics and that standard police procedure required fingerprint analysis. Because neither defense attorney had laid any evidentiary foundation for those assertions—by, for example, asking one of the officers on cross-examination whether the plastic bags were (or could have been) tested for fingerprints, and whether standard procedure required such testing—Hoffman's argument was improper.[5] Accordingly, we hold that the District Court did not err, much less abuse its discretion, in refusing to permit the argument. *See, e.g., Gibson,* 513 F.2d at 980 (upholding trial court's preclusion of defense argument regarding lack of bank surveillance films where there was "no evidence introduced to support the assertion that there was even any surveillance camera operative in the bank at that time"); *People v. Beier,* 29 Ill.2d 511, 194 N.E.2d 280, 283 (Ill.1963) (finding prosecutor's argument to jury that defendant wiped fingerprints from weapon to be improper where there "was no evidence whatever that the revolver bore no prints, much less that it had been wiped clean of them"); *cf. Poindexter,* 942 F.2d at 359 (finding defendant's argument regarding absence of fingerprint evidence to be proper where trial testimony indicated that contraband had been "dusted" for fingerprints).

Appellants contend that *Eley v. State,* 288 Md. 548, 419 A.2d 384 (1980), supports their claim that the District Court's ruling amounted to reversible error. In *Eley,* the Maryland Court of Appeals held that a defendant is entitled to comment on the absence of fingerprint evidence even if the defendant has not laid a foundation for such comment during cross-examination: "[W]here there is *unexplained* silence concerning a routine and reliable method of identification ... it is within the scope of permissible argument to comment on this gap in the proof offered." *Id.* 419 A.2d at 388 (emphasis in original). Because the trial court had prevented defense counsel from making any mention of the absence of fingerprint evidence in closing argument, the Court of Appeals reversed Eley's conviction and remanded for a new trial. *See id.* at 385, 388; *see also Sample v. State,* 314 Md. 202, 550 A.2d 661, 663–64 (1988) (following reasoning of *Eley*).

We think that *Eley* may be distinguishable from the case at bar, because it appears that the defense lawyer's argument in that case was limited to the contention that the absence of fingerprint evidence weakened the prosecution's case against his client—an argument that the Government concedes to be appropriate. However, as Appellants point out, some of the language in *Eley* seems to go further, suggesting that the kinds of inferences urged by Hoffman's counsel in this case would be permissible even in the absence of any evidentiary foundation. *See Eley,* 419 A.2d at 386 (suggesting that unexplained absence of fingerprint evidence "permit[s] the adverse inference that the evidence would have been unfavorable to the State"). To the extent that *Eley* so holds, we part company with the Maryland Court of Appeals and instead join ranks with the numerous other courts, federal and state, that have reached a contrary conclusion. *See, e.g., Poindexter,* 942 F.2d at 359–60; *United States v. Quinn,* 901 F.2d 522, 532 (6th Cir.1990); *Gibson,* 513 F.2d at 980; *Latimer,* 511 F.2d at 502–03; *Jordan v. State,* 267 Ala. 361, 102 So.2d 4, 8 (1958); *Beier,* 194 N.E.2d at 283; *State v. Davidson,* 351 N.W.2d 8, 12–13 (Minn.1984); *State v. Simpson,* 611 S.W.2d 556, 560 (Mo.Ct.App. 1981); *Commonwealth v. Wright,* 255

---

5. *Cf. Graves v. United States,* 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893) (finding "missing witness" inference instruction improper absent showing that witness is peculiarly available to party against whom inference is to be drawn); *Pitts,* 918 F.2d at 199–200 (same).

Pa.Super. 512, 388 A.2d 1084, 1086 (1978); *State v. Emerson,* 149 Vt. 171, 541 A.2d 466, 470 (1987).

In sum, we conclude that the District Court did not err by ruling that Hoffman's closing argument was improper. It is permissible for a defense attorney to point out to the jury that no fingerprint evidence has been introduced and to argue that the absence of such evidence weakens the Government's case; however, the attorney may not use the absence of fingerprint evidence as a springboard for arguing facts not in evidence, *e.g.,* that the Government made no effort to obtain fingerprints, that fingerprints could have been obtained from the object at issue, or that such evidence, if obtained, would have been favorable to the defense. Defense counsel attempted to take the latter route in this case, and it was proper for the District Court to prevent him from doing so.

### III. CONCLUSION

For the reasons stated above, Appellants' convictions are affirmed.

*So ordered.*