# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 15, 2010          Decided June 28, 2011

No. 09-3099

UNITED STATES OF AMERICA,
APPELLEE

v.

MARK STUBBLEFIELD,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cr-00171)

*Dennis M. Hart*, appointed by the court, argued the cause and filed the brief for appellant.

*Michael J. Friedman*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Roy W. McLeese III*, *Chrisellen R. Kolb*, and *Stephanie Brooker*, Assistant U.S. Attorneys.

Before: TATEL, GARLAND, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* Garland.

Garland, *Circuit Judge*:  Mark Stubblefield appeals from his convictions for multiple bank robberies.  He contends that his trial violated the Speedy Trial Act, that the district court erred in limiting the scope of his counsel's closing argument, and that the court further erred in admitting evidence of an additional, uncharged bank robbery.  We reject the first two contentions and conclude that any error with respect to the third was harmless.

I

On January 29, 2008, a man entered Washington First bank in Northwest Washington, D.C. and passed the teller a crumpled note informing her that it was a robbery.  When the teller dropped the note, the robber snatched it back.  The teller then turned over more than one thousand dollars in cash, and the robber escaped.  Washington First was robbed twice more, on March 26 and April 7, 2008.  On all three occasions, witnesses described the perpetrator as a very short African-American male, with unusual marks or indentations on the skin of his face.  In two of the robberies, witnesses also described the perpetrator as having a unique, raspy voice.  Two of the crimes were initiated when the robber handed the teller a note, which he snatched back before she could finish reading it.  A bank employee who witnessed all three robberies reported that the robber was the same in each one.

On March 26, approximately fifteen minutes after the second Washington First bank robbery, there was an unsuccessful attempt to rob the Urban Trust Bank located less than four blocks away.  The perpetrator approached the teller and handed her a note that said, "give me your large bills."  He left when the teller ran away without handing over any money.

Witnesses described the robber as a short black man with a mark on his face.

A United Bank in Northwest Washington was also robbed twice during the first half of 2008. On March 21 and April 11, 2008, a person entered the bank, handed the teller a note demanding money, and then left the bank with the cash. Witnesses reported that the two robberies were committed by the same person, again described as a very short African-American man with odd facial skin.

Finally, on April 21, 2008, a robber obtained over six hundred dollars from a teller at Commerce Bank by walking up to her window, handing her a crumpled note, and -- before she had a chance to read it -- telling her it was "a stick up." Witnesses reported that the robber was a short black man with unusual facial markings or indentations and a raspy voice.

The Metropolitan Police Department distributed wanted posters in connection with the robberies. In early May 2008, an informant told the police that Mark Stubblefield matched the description of the man on the posters. On May 13, Stubblefield was charged by complaint with robbery, having been taken into custody on another charge. Stubblefield did not have any of the stolen currency on his person when he was arrested, nor was there evidence of a dye pack that had been hidden in some of the stolen money.[1] His unusual appearance, however, did match the witnesses' descriptions of the robber: Stubblefield is a 5'2", 51-year-old African-American male who, at the time of his arrest, "had loose facial skin that created certain types of indentations on his face when he made certain facial expressions." Trial Tr.

---

[1]The police were unable to search Stubblefield's residence for the currency or other physical evidence because he had no fixed address, and investigators could not determine where he was living.

at 44 (Jan. 27, 2009).[2]  On June 13, 2008, a grand jury handed down an indictment charging Stubblefield with six counts of bank robbery and one count of attempted bank robbery, all in violation of 18 U.S.C. § 2113(a).

At trial, the government relied primarily on witness identification evidence.  It presented at least one witness to each robbery who picked Stubblefield out of a photo array, identifying him as the perpetrator.  In addition, the court permitted the government to present -- over defense objections -- information concerning a further, uncharged bank robbery that occurred in Virginia.  In that robbery, witnesses described the perpetrator as a short African-American man with a "smoker's voice," who used a note to obtain money from a teller during business hours.  A witness to the Virginia robbery identified Stubblefield from a photo array.

In his defense, Stubblefield pointed out that, although the police were able to collect some latent fingerprints at the scene of several of the robberies, none of the prints matched each other or those of Stubblefield.  Stubblefield's fingerprint expert testified that this was highly unusual, as was the fact that the police had been unable to detect any latent prints at all at some of the banks.  Stubblefield also sought to undermine the various witness identifications.  He presented evidence that one witness to the March 26 Washington First robbery and one witness to the United Bank robberies each indicated the perpetrator was *not* in a photo array that contained Stubblefield's picture, and he elicited testimony that some witnesses initially described the robber as having different physical characteristics than those of Stubblefield.  Stubblefield also called three witnesses to the uncharged Virginia robbery to testify to their impressions that

---

[2]These indentations were apparently caused by missing teeth, which were repaired before trial by a dentist at the D.C. Jail.

the perpetrator was a 20- to 25-year-old, light-skinned man who was approximately 5'6" tall. Trial Tr. 29-59 (Feb. 9, 2009 a.m.).

The jury convicted Stubblefield on all charges, and he now raises three challenges to his conviction.

II

Stubblefield's first contention is that his indictment should have been dismissed pursuant to the 30-day complaint-to-indictment clock of the Speedy Trial Act, 18 U.S.C. §§ 3161(b), 3162(a)(1). Defense counsel filed a motion to dismiss on that ground in the district court, which the court denied without comment. We review a district court's Speedy Trial Act determination "de novo [as to] matters of law," and "for clear error as to findings of fact." *United States v. Sanders*, 485 F.3d 654, 656 (D.C. Cir. 2007).

The Speedy Trial Act provides: "If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment . . . is filed within the [30-day] time limit required by section 3161(b) as extended by section 3161(h) . . . , such charge against that individual contained in such complaint shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1). Stubblefield contends that, because 31 calendar days passed between the May 13 complaint and the June 13 indictment in his case, the Act required the district court to dismiss the case.

The government does not dispute Stubblefield's arithmetic. The Speedy Trial Act, however, contains exceptions to the 30-day rule. As just quoted, § 3162(a)(1) requires that the indictment be filed within the 30-day limit "as extended by section 3161(h)." That section provides, as particularly relevant here, that the "following periods of delay shall be excluded in

computing the time within which . . . an indictment must be filed":

> (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to . . . (D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion.

18 U.S.C. § 3161(h).  On appeal, the government suggests an array of days that might be excluded under this provision.  However, because there were only 31 days between the complaint and Stubblefield's indictment, there need only be one excluded day to bring the indictment within the Act's time limitation.  And because at least one day clearly is excluded, we need not address the government's other arguments.

The excluded date is May 23, 2008.  The district court's docket states that, on that day, the United States made an oral motion to commit the defendant to the custody of the Attorney General, the magistrate judge held a detention hearing, and the magistrate granted the government's motion and ordered pretrial detention.  *See* Crim. Docket for Case #: 1:08-cr-00171.  Accordingly, May 23 is excluded from the 30-day calculation as a period of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on . . . such motion," 18 U.S.C. § 3161(h)(1)(D).  *See United States v. Harris*, 491 F.3d 440, 443 n.1 (D.C. Cir. 2007) (holding that both the day on which a pretrial motion is filed and the day on which the hearing is held are excluded); *United States v. Taylor*, 497 F.3d 673, 676 (D.C. Cir. 2007) (holding that "exclusion under § 3161(h) . . . is triggered by written and oral motions alike").

At oral argument, Stubblefield conceded that, had the district court stated it was denying his Speedy Trial Act motion because May 23 was excluded, he would have no ground for appeal. Oral Arg. Tr. 12. But because the court did not give that -- or any other rationale -- Stubblefield maintains that the denial of his motion cannot be sustained. This circuit, however, has held that the fact "[t]hat neither the district court nor the government relied upon [an] exclusion provided by section 3161(h)(1) does not . . . preclude us from doing [so]." *United States v. Garrett,* 720 F.2d 705, 710 (D.C. Cir. 1983). And because the exclusion provided by § 3161(h)(1)(D) is "automatic[,]" *United States v. Tinklenberg*, — S. Ct. —, 2011 WL 2039366, at *6 (May 26, 2011), and applies "without district court findings," *Bloate v. United States*, 130 S. Ct. 1345, 1353 (2010), there is no reason why we should not apply it and hold Stubblefield's indictment timely. *See Garrett*, 720 F.2d at 710-11.[3]

## III

Stubblefield's second contention is that the district court erred in granting the government's motion to bar his counsel from pursuing two lines of argument in her closing. We review the court's decision to limit the scope of closing argument for abuse of discretion. *United State v. Brodie*, 524 F.3d 259, 267 (D.C. Cir. 2008); *United States v. Hoffman*, 964 F.2d 21, 24 (D.C. Cir. 1992).

---

[3]*Tinklenberg* held that "the filing of a pretrial motion falls within [§ 3161(h)(1)(D)] irrespective of whether it actually causes, or is expected to cause, delay." 2011 WL 2039366, at *3. *Bloate* noted that § 3161(h)(1)(D) "automatically" applies without a finding by the district court that a continuance would serve the "ends of justice." *See* 130 S. Ct. at 1350-53, 1355-56.

The district court barred counsel from arguing that law enforcement officers had failed to engage in "best practices" when presenting witnesses with photo arrays, and that DNA evidence (which the government did not have) "was more trustworthy than fingerprint or photo identification evidence." Appellant Br. 39. The district court barred these arguments because counsel had presented "no evidence of what any [b]est [p]ractices are" with respect to photo arrays, and no evidence "that DNA evidence is more reliable" than fingerprints or identifications. Trial. Tr. 54-55 (Feb. 9, 2009 p.m.).[4] Because it is "elementary . . . that counsel may not premise arguments on evidence which has not been admitted," *Johnson v. United States*, 347 F.2d 803, 805 (D.C. Cir. 1965), we find no abuse of discretion here. *See also Hoffman*, 964 F.2d at 24 (noting that "it is improper for either the prosecutor or defense counsel to make statements as to facts not proven" (internal quotation marks and alteration omitted)).

At oral argument, Stubblefield conceded that he did not introduce evidence concerning best practices, but suggested that knowledge of the best practices for investigating crimes should be considered part of the "common human experience" of jurors. Oral Arg. Tr. 7. It is true that nothing precludes an attorney "from referring to matters of common public knowledge or human experience" in closing argument. *United States v. Maddox*, 156 F.3d 1280, 1282 (D.C. Cir. 1998). But we have previously held that a prosecutor may not premise a closing argument on the assumption that police procedures are "common knowledge." *Id.* (holding it improper for the government to argue without evidence that "police customarily

---

[4]Counsel did question the law enforcement witnesses who conducted the photo arrays about "best practices," but they provided no information and appeared unfamiliar with the term. *See, e.g.*, Trial Tr. 56-57 (Jan. 27, 2009); Trial Tr. 34-35 (Feb. 2, 2009 p.m.).

return car keys having evidentiary value"). The same rule applies to defense counsel. *See Hoffman*, 964 F.2d at 25 (holding that the trial court properly barred defense counsel from arguing "that standard police procedure required fingerprint analysis," without offering supporting evidence).

Although defense counsel may not introduce arguments for which there is no evidentiary support, she "must be permitted to argue all reasonable inferences from the facts in the record." *Hoffman*, 964 F.2d at 24. The district court permitted Stubblefield's counsel to do just that. While she was not allowed to argue that the officers had failed to implement best practices in conducting the photo arrays, she was permitted to argue that the witnesses' identifications were unreliable. *See, e.g.*, Trial Tr. 41-50 (Feb. 10, 2009). Similarly, while the court did not allow counsel to argue that the government was required to introduce fingerprint or DNA evidence, or that such evidence was better than eye-witness identifications, it did permit her to emphasize that the government had failed to introduce DNA or fingerprint evidence against Stubblefield, and to argue that the absence of such evidence created reasonable doubt. *Id.* at 53-59. We therefore find no abuse of discretion in the district court's treatment of counsel's closing argument.

IV

Finally, Stubblefield contends that the district court erred in permitting the government to introduce evidence regarding an uncharged bank robbery in Virginia. The court permitted the introduction of this evidence under Federal Rule of Evidence 404(b), which bars the admission of "[e]vidence of other crimes . . . to prove the character of a [defendant] in order to show action in conformity therewith," but allows the introduction of such evidence "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or

absence of mistake or accident." FED. R. EVID. 404(b). Here, the government maintains that evidence concerning the uncharged Virginia robbery was admissible because it used that evidence for such an "other purpose" -- proof of identity. Stubblefield argues that, to the contrary, the Virginia evidence was valuable only for the impermissible purpose of proving his alleged propensity to rob banks.

We need not resolve this dispute because even if the district court erred, any error was harmless. *See United States v. Johnson*, 519 F.3d 478, 483 (D.C. Cir. 2008). Under Federal Rule of Criminal Procedure 52(a), we may not correct a district court's error unless it affected the defendant's "substantial rights." FED. R. CRIM. P. 52(a). "[I]n most cases [this] means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). When, as here, the error did not involve a constitutional right, it is not prejudicial as long as "it did not have a 'substantial and injurious effect or influence in determining the jury's verdict.'" *United States v. Powell*, 334 F.3d 42, 45 (D.C. Cir. 2003) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

The government bears the burden of proving the absence of prejudicial effect, *Johnson*, 519 F.3d at 483, and it has met that burden in this case. At trial, the government presented testimony from numerous witnesses to the six charged bank robberies, each of whom described a perpetrator who resembled Stubblefield. The jury also heard that at least one witness to each of the charged robberies had identified Stubblefield as the perpetrator from a photo array. Under these circumstances, it is very unlikely that additional testimony regarding one more allegedly similar robbery would have a "substantial . . . influence in determining the jury's verdict." That is particularly so given that, as Stubblefield himself argues, the evidence

connecting him to the Virginia robbery was substantially weaker than that connecting him to the others.  None of the prosecution witnesses testified that the Virginia robber had unusual facial skin; and the defense called several witnesses of its own who described a robber who was taller, lighter-skinned, and younger than Stubblefield.  Indeed, we find it hard to understand why the government went to the trouble of proffering the Virginia evidence in the first place, given that it was considerably weaker (and certainly no more gripping) than the evidence of the crimes charged in the indictment.[5]

On this record, we conclude that, even if it were erroneous, the admission of the Virginia evidence was harmless because it did not have a "substantial and injurious effect or influence" on the jury's verdict.  *Kotteakos*, 328 U.S. at 776.

V

For the foregoing reasons, the judgment of the district court is

*affirmed*.

---

[5]We further note that the district court gave the jury limiting instructions designed to ensure that it did not use the evidence of the uncharged offense to conclude that Stubblefield showed a propensity to rob banks. *See* Trial Tr. 99 (Feb. 10, 2009); *cf. United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) (finding no unfair prejudice under Federal Rule of Evidence 403 because similar limiting instructions "minimize[d] the danger that the jury would use the 404(b) evidence" to conclude that the defendant had a propensity to commit the charged offense).